# EXHIBIT B

# ECLI:NL:HR:2006:AZ0758

| | |
|---|---|
| Authority | Supreme Court |
| Date of decision | 08-12-2006 |
| Date of publication | 08-12-2006 |
| Case number | C05/256HR |
| Formal relationships | Conclusion: ECLI:NL:PHR:2006:AZ0758 |
| Areas of law | Civil law |
| Special features | Cassation |
| Content Indication | Director's liability. Dispute between the tax collector and a director and sole shareholder of bankrupt companies that formed a fiscal unity for sales tax, concerning the director's liability in tort due to the fact that he, as director of the fiscal unity, acted improperly and in violation of the relevant statutory obligations by not having the fiscal unity file tax returns or not having done so on time or not having filed tax returns correctly and completely, which caused the tax collector to suffer a loss; personal liability of director, standards. |
| Findings | Rechtspraak.nl<br>JOL 2006, 779<br>NJ 2006, 659<br>RN 2007, 12<br>RO 2007, 12<br>RvdW 2006, 1139<br>NJB 2007, 19<br>Corporate Law 2007, 36 with annotation by J.B. Wezeman V-N 2007/11.23 with annotation by Editor<br>JRV 2007, 8<br>JRV 2007, 123<br>JWB 2006/425<br>JOR 2007/38 |

# Excerpt

December 8,

2006 Senate

No. C05/256HR

RM


Supreme Court of the

Netherlands Judgment

In the matter of:


THE RECEIVER OF THE TAX DEPARTMENT OOST, formerly: the Recipient of the Tax Office/Onderprises Almelo,

office at Almelo, the plaintiff

in cassation, lawyer: M.J.

Schenck,

t e g e n

[Respondent],

residing at [place of residence], Defendant in cassation, did not appear.

1. The proceedings on the merits

The plaintiff in cassation - further to be referred to as: the Receiver - has summoned the defendant in cassation - further to be referred to as: [defendant] - summoned to appear before the District Court in Almelo and, after modification of the claim, claimed:

i. rule that [defendant] has acted unlawfully toward the Receiver and is thus liable to compensate the loss suffered by the Receiver; and

ii. order [defendant] to pay to the Receiver the damages suffered by the Receiver, to be ascertained by record and settled according to law;

iii. order [defendant] to pay the costs of the proceedings, the costs of the attachments. [defendant]

contested the claim.

By judgment dated January 9, 2002, to the extent in cassation, the district court granted the Receiver's claims under i. and ii.

Against this judgment, [defendant] appealed to the Arnhem Court of Appeal.

By judgment dated June 7, 2005, the court of appeals set aside the district court's judgment and, ruling again, dismissed the Receiver's claim.

The court's ruling is to this judgment.

2. The proceedings in cassation

The Receiver has the judgment of the Court of Appeal. The writ of cassation is attached to this judgment and forms part thereof.

Against the [defendant] who did not appear, default was

granted. The case was explained before the Receiver by his

attorney.

The opinion of Attorney General L. Timmerman seeks dismissal of the appeal.

The Receiver's attorney responded to that conclusion by letter dated September 28, 2006.

3. Resource Assessment

3.1 The following can be in cassation.

(i) [Defendant] was a director and sole shareholder of two limited liability companies, which formed a sales tax group.

(ii) A total of seven after-tax sales tax assessments totaling FI2,021,297 were imposed on this fiscal unit in 1997 and in 1998. The fiscal entity left this amount unpaid.

(iii) Both companies were declared bankrupt, successively on July 15, 1998 and September 9, 1998.

3.2 The Receiver sought a declaratory judgment that [defendant] had acted unlawfully towards him and he claimed that [defendant] should pay to him the damages suffered as a result, to be recorded. The court granted this claim and the court dismissed it.

3.3 On appeal, the Internal Revenue Service expressly stated that it bases its claim primarily on wrongful acts by [the defendant] and, unlike in the first instance, not (only) on the basis of improper management, which was maintained in the alternative. According to the Receiver, [defendant] can personally be blamed for the fact that the companies of which he was a director (together the fiscal unity for sales tax, hereafter: the fiscal unity), did not comply with the fiscal regulations, with which [defendant] " the disadvantage of the Receiver at face value." In particular, the Receiver accuses [defendant] of having "dragged and dropped turnovers," specifically by (fraudulently) shuffling returns and remittances on a large scale. The Receiver argued that these actions in themselves unlawful, so that the question of whether the prejudice was or should have been foreseeable did not need to be answered. [defendant] has acknowledged that within the fiscal unity turnovers have been "dragged around" and he has argued, inter alia, as a defense that he (reasonably) could not foreseen that the companies would not pay the assessments.

3.4 To the extent relevant in cassation, the judgments of the court of appeals may be as follows.

(a) In paragraph 4.3, the court sets forth the Recipient's claims and considers that, according to the Recipient, [defendant] mismanaged the companies with the result that the Recipient is unable to recover the additional tax assessments from the tax unit and consequently suffers damages, which action is therefore unlawful against the Recipient.

(b) In paragraph 4.7 the Court of Appeal finds that [defendant] has not acted contrary to his obligations arising from the law, because these do not rest on him but on the fiscal unity. In paragraph 4.8 the Court of Appeal then states that it must be assessed whether [defendant] has acted contrary to what is customary in social intercourse according to unwritten law. According to the Court of Appeal, this is the case if, as argued by the Ontvanger, [defendant] knew or reasonably ought to have understood that as a result of the acts attributed to him, the fiscal unity would not be able to comply with its tax obligations, or would not be able to do so within a reasonable term, and would not offer recourse for foreseeable loss which the Ontvanger would consequently suffer.

(c) In paragraphs 4.9 and 4.10, the Court of Appeal discusses the actions that [the defendant] is accused of and, in particular, the fact that during a series of years turnover and declarations were shifted around, and in paragraph 4.11 the Court of Appeal comes to the conclusion that in the years 1991 through 1994 there was a constant practice that did lead to additional sales tax assessments, plus fines, but not to the complete non-payment of additional sales tax assessments. The court added that an audit of the books dated March 22, 1993 showed that the Inspector did not consider this practice to be such a serious offense and mitigated the fine imposed. In view of this, in the opinion of the court of appeal, the continuation of this customary practice in the years 1995 through 1998 did not in itself have to result in [defendant] reasonably having to understand that the additional tax assessments would remain unpaid. This also applies to the reproach that [defendant] deliberately understated sales tax return(s). The court adds that liens were granted to the Receiver on outstanding claims of the companies. Although the Receiver has stated that the pledged receivables have turned out to be partly uncollectible, it has neither been stated nor shown that [defendant] knew or reasonably should have understood this at the time of the pledge. With this, according to the court, the Recipient has not put forward sufficient grounds to support its assertion that [defendant] knew or reasonably should have understood that the fiscal unity would not provide recourse for the foreseeable damages that the Recipient would suffer as a result.

(d) In paragraph 4.12, the court summarized that

"the Receiver has not presented sufficient facts which, if , would justify the that [the defendant] knew or reasonably should have understood that, as a result of the acts complained of, the fiscal unit would not be able to pay the additional tax assessments (in full) and would not provide recourse for the foreseeable damage the Receiver would suffer as a result."

3.5 In assessing the plea, the following should be noted. In a case like the present one, it concerns prejudice to a creditor of a company due to the fact that its claim remains unpaid and unrecoverable. Depending on the circumstances of the specific case, the person who as director (i) has acted on behalf of the company or (ii) has caused or permitted the company to its statutory or contractual obligations may also be held liable for this prejudice. In both cases, it may generally only be assumed that the director has acted unlawfully vis-à-vis the creditor of the company where, also in view of his obligation to perform his duties properly as referred to in Section 2:9 of the Dutch Civil Code, a sufficiently serious reproach can be made against him (cf. HR 18 February 2000, no. C98/208, NJ 2000, 295).

For the cases referred to under (i), case law has accepted the criterion that personal liability of the director of the company can be assumed if, entering into obligations on behalf of the company, he knew or should reasonably have understood that the company would not be able to meet its obligations and would not have any recourse, barring circumstances to be adduced by the director on the basis of which the conclusion can be justified that he cannot be blamed personally for the prejudice. In the cases referred to under (ii), the director concerned may be held liable for damages of the creditor if his acts or omissions as director vis-à-vis the creditor in the given circumstances are so careless that he can be personally blamed for them. Such a serious fault will in any case exist if it is established that the director knew or reasonably should have understood that the company's conduct, which he brought about or allowed, would result in the company fulfilling its obligations and would not provide a remedy for the damages occurring as a result. However, other circumstances may also arise on the basis of which a serious personal culpability may be assumed.

In the present case - as stated above in 3.3 - [defendant] is blamed for having acted unlawfully towards the Receiver as director of the fiscal unity, because he acted improperly and in violation of the existing legal obligations in the matter by, to the essence, not having the fiscal unity file sales tax returns, or not having done so on time, or not having done so correctly and completely, as a result of which the Receiver was prejudiced. The Receiver therefore primarily unmistakably invoked the liability referred to above under (ii).

3.6 It follows from what has been considered above in 3.5 that, in connection with the primary basis of its claim asserted by the Receiver, the Court first of all had to assess whether the acts alleged against [Respondent]  unlawful towards it, whereby the Court had to take into account all the circumstances.

Since [defendant] had put up a defense to that effect, the Court of Appeal was allowed to include in its judgment the extent to which [defendant] knew or reasonably should have understood that the tax debts of the fiscal unity would remain unpaid. The judgment of the Court of Appeal implies that, if the would not be , there could not be a sufficiently serious personal accusation against [defendant], because the actions imputed to him did indeed imply that the fiscal unity did not or not fully comply with its legal obligations, but in the context of the assessment of his personal liability are in themselves not sufficient for the assumption of such a serious personal accusation that his actions must be unlawful. The court evidently found the Recipient's assertion that [defendant] "took the unpaid assessments at face value" in this context too slight (incidental) a reproach for personal liability of [defendant]. Thus understood, the court's opinion does not show an error of law and, taking into account that this is a valuation of the circumstances reserved to the court adjudicating the facts, is not incomprehensible.

On the foregoing, all the complaints of parts 1 through 3 of the plea .

3.7 The Receiver has no interest in addressing part 4 because the court's opinion challenged by it does not independently support its decision.

4. Decision

Supreme Court:

dismisses the appeal;

order the Receiver to pay the costs of the proceedings in cassation, assessed up to this judgment at nil on the part [defendant].

This judgment was delivered by Vice-President D.H. Beukenhorst presiding and Counselors O. de Savornin Lohman, E.J. Numann, A. Hammerstein and W.D.H. Asser, and pronounced in public by Counselor E.J. Numann on December 8, 2006.

# ECLI:NL:HR:2006:AZ0758

| | |
|---|---|
| Instantie | Hoge Raad |
| Datum uitspraak | 08-12-2006 |
| Datum publicatie | 08-12-2006 |
| Zaaknummer | C05/256HR |
| Formele relaties | Conclusie: ECLI:NL:PHR:2006:AZ0758 |
| Rechtsgebieden | Civiel recht |
| Bijzondere kenmerken | Cassatie |
| Inhoudsindicatie | Bestuurdersaansprakelijkheid. Geschil tussen de ontvanger en een directeur-enig aandeelhouder van failliet verklaarde vennootschappen die een fiscale eenheid voor de omzetbelasting vormden, over diens aansprakelijkheid uit onrechtmatige daad doordat hij als bestuurder van de fiscale eenheid onbehoorlijk en in strijd met de terzake bestaande wettelijke verplichtingen heeft gehandeld door de fiscale eenheid niet of niet tijdig dan wel niet juist en volledig belastingaangiften te laten doen waardoor de ontvanger is benadeeld; persoonlijke aansprakelijkheid bestuurder, maatstaven. |
| Vindplaatsen | Rechtspraak.nl <br> JOL 2006, 779 <br> NJ 2006, 659 <br> RN 2007, 12 <br> RO 2007, 12 <br> RvdW 2006, 1139 <br> NJB 2007, 19 <br> Ondernemingsrecht 2007, 36 met annotatie van J.B. Wezeman <br> V-N 2007/11.23 met annotatie van Redactie <br> JRV 2007, 8 <br> JRV 2007, 123 <br> JWB 2006/425 <br> JOR 2007/38 |

# Uitspraak

8 december 2006

Eerste Kamer

Nr. C05/256HR

RM

Hoge Raad der Nederlanden

Arrest

in de zaak van:

DE ONTVANGER VAN DE BELASTINGDIENST OOST, voorheen: de Ontvanger van de Belastingdienst/Ondernemingen Almelo,

kantoorhoudende te Almelo,

EISER tot cassatie,

advocaat: mr. M.J. Schenck,

t e g e n

[Verweerder],

wonende te [woonplaats],

VERWEERDER in cassatie,

niet verschenen.

1. Het geding in feitelijke instanties

Eiser tot cassatie - verder te noemen: de Ontvanger - heeft bij exploot van 25 september 1998 verweerder in cassatie - verder te noemen: [verweerder] - gedagvaard voor de rechtbank te Almelo en, na wijziging van eis, gevorderd:

i. voor recht te verklaren dat [verweerder] jegens de Ontvanger onrechtmatig heeft gehandeld en aldus gehouden is de door de Ontvanger geleden schade te vergoeden; en

ii. [verweerder] te veroordelen om aan de Ontvanger te voldoen de door deze geleden schade, nader op te maken bij staat en te vereffenen volgens de wet;

iii. [verweerder] te veroordelen in de proceskosten, de kosten van de beslagen daaronder begrepen.

[verweerder] heeft de vordering bestreden.

De rechtbank heeft bij vonnis van 9 januari 2002, voorzover in cassatie van belang, de vorderingen van de Ontvanger onder i. en ii. toegewezen.

Tegen dit vonnis heeft [verweerder] hoger beroep ingesteld bij het gerechtshof te Arnhem.

Bij arrest van 7 juni 2005 heeft het hof het vonnis van de rechtbank vernietigd en, opnieuw rechtdoende, de vordering van de Ontvanger alsnog afgewezen.

Het arrest van het hof is aan dit arrest gehecht.

2. Het geding in cassatie

Tegen het arrest van het hof heeft de Ontvanger beroep in cassatie ingesteld. De cassatiedagvaarding is aan dit arrest gehecht en maakt daarvan deel uit.

Tegen de niet verschenen [verweerder] is verstek verleend.

De zaak is voor de Ontvanger toegelicht door zijn advocaat.

De conclusie van de Advocaat-Generaal L. Timmerman strekt tot verwerping van het beroep.

De advocaat van de Ontvanger heeft bij brief van 28 september 2006 op die conclusie gereageerd.

3. Beoordeling van het middel

3.1 In cassatie kan van het volgende worden uitgegaan.

(i) [Verweerder] was directeur en enig aandeelhouder van twee besloten vennootschappen, die een fiscale eenheid voor de omzetbelasting vormden.

(ii) Aan deze fiscale eenheid zijn in 1997 en in 1998 in totaal zeven naheffingsaanslagen omzetbelasting opgelegd tot een bedrag van ƒ 2.021.297,--. De fiscale eenheid heeft dit bedrag onbetaald gelaten.

(iii) Beide vennootschappen zijn, achtereenvolgens op 15 juli 1998 en 9 september 1998, failliet verklaard.

3.2 De Ontvanger heeft een verklaring voor recht gevraagd dat [verweerder] jegens hem onrechtmatig heeft gehandeld en hij heeft gevorderd dat [verweerder] aan hem de daardoor geleden schade, op te maken bij staat, zal voldoen. De rechtbank heeft deze vordering toegewezen en het hof heeft haar afgewezen.

3.3 In hoger beroep heeft de Ontvanger uitdrukkelijk gesteld dat hij zijn vordering primair baseert op onrechtmatig handelen van [verweerder] en, anders dan in eerste aanleg, niet (alleen) op de, subsidiair gehandhaafde, grondslag van onbehoorlijk bestuur. Volgens de Ontvanger valt aan [verweerder] persoonlijk een verwijt te maken dat de vennootschappen waarvan hij directeur was (samen de fiscale eenheid voor de omzetbelasting, hierna: de fiscale eenheid), de fiscale regelgeving niet hebben nageleefd, waarmee [verweerder] het benadelen van de Ontvanger "op de koop toe heeft genomen". In het bijzonder verwijt de Ontvanger aan [verweerder] dat hij heeft "gesleept met omzetten", met name door het op grote schaal (frauduleus) schuiven met aangiften en afdrachten. De Ontvanger heeft aangevoerd dat dit handelen op zichzelf reeds onrechtmatig is, zodat de vraag of de benadeling voorzienbaar was of behoorde te zijn, geen beantwoording behoefde. [verweerder] heeft erkend dat binnen de fiscale eenheid met omzetten is "gesleept" en hij heeft onder meer als verweer aangevoerd dat hij (redelijkerwijze) niet had kunnen voorzien dat de vennootschappen de aanslagen niet zouden voldoen.

3.4 Voor zover in cassatie van belang kunnen de oordelen van het hof als volgt worden samengevat.

(a) Het hof geeft in rov. 4.3 de vorderingen van de Ontvanger weer en overweegt dat [verweerder] volgens de Ontvanger de vennootschappen onbehoorlijk heeft bestuurd met als gevolg dat de Ontvanger de naheffingsaanslagen niet op de fiscale eenheid kan verhalen en daardoor schade lijdt, welk handelen daarom onrechtmatig is jegens de Ontvanger.

(b) In rov. 4.7 stelt het hof vast dat [verweerder] niet heeft gehandeld in strijd met zijn uit de wet voortvloeiende verplichtingen, omdat deze niet op hem maar op de fiscale eenheid rusten. Het hof laat daarop in rov. 4.8 volgen dat beoordeeld moet worden of [verweerder] heeft gehandeld in strijd met hetgeen volgens ongeschreven recht in het maatschappelijk verkeer betaamt. Daarvan is volgens het hof sprake indien, zoals door de Ontvanger is gesteld, [verweerder] wist of redelijkerwijze behoorde te begrijpen dat de fiscale eenheid als gevolg van de hem verweten handelingen niet of niet binnen een redelijke termijn aan haar fiscale verplichtingen zou kunnen voldoen en geen verhaal zou bieden voor de voorzienbare schade die de Ontvanger dientengevolge zou lijden.

(c) In de rov. 4.9 en 4.10 gaat het hof in op de aan [verweerder] verweten handelingen en in het bijzonder op het feit dat gedurende een reeks van jaren met omzetten en aangiften is geschoven, en in rov. 4.11 komt het hof tot de conclusie dat in de jaren 1991 tot en met 1994 sprake is geweest van een bestendige praktijk die weliswaar heeft geleid tot naheffingen omzetbelasting, vermeerderd met boetes, doch niet tot het volledig onbetaald laten van naheffingsaanslagen omzetbelasting. Daaraan voegt het hof toe dat uit een boekenonderzoek van 22 maart 1993 blijkt dat de Inspecteur deze handelwijze niet zo'n ernstig vergrijp vindt en de opgelegde boete heeft gematigd. Gelet daarop behoefde naar het oordeel van het hof de voortzetting van deze bestendige praktijk in de jaren 1995 tot en met 1998 op zichzelf niet reeds ertoe te leiden dat [verweerder] redelijkerwijze behoorde te begrijpen dat de naheffingsaanslagen onbetaald zouden blijven. Dit geldt ook voor het verwijt dat [verweerder] bewust te lage aangifte(n) omzetbelasting deed. Het hof voegt daaraan toe dat aan de Ontvanger pandrechten zijn verleend op openstaande vorderingen van de vennootschappen. De Ontvanger heeft weliswaar gesteld dat de verpande vorderingen deels oninbaar zijn gebleken, maar gesteld noch gebleken is dat [verweerder] dit ten tijde van de verpanding wist of redelijkerwijze had moeten begrijpen. Daarmee heeft de Ontvanger, aldus het hof, onvoldoende aangevoerd ter onderbouwing van zijn stelling dat [verweerder] wist of redelijkerwijze had moeten begrijpen dat de fiscale eenheid geen verhaal zou bieden voor de voorzienbare schade die de Ontvanger als gevolg van dit een en ander zou lijden.

(d) In rov. 4.12 vat het hof samen dat

"de Ontvanger onvoldoende feiten heeft gesteld die, indien deze zouden komen vast te staan, de conclusie rechtvaardigen dat [verweerder] wist of redelijkerwijze behoorde te begrijpen dat de fiscale eenheid als gevolg van de verweten handelingen de naheffingsaanslagen niet (volledig) zou kunnen voldoen en geen verhaal zou bieden voor de voorzienbare schade die de Ontvanger dientengevolge zou lijden."

3.5 Bij de beoordeling van het middel moet het volgende worden vooropgesteld. Het gaat in een geval als het onderhavige om benadeling van een schuldeiser van een vennootschap door het onbetaald en onverhaalbaar blijven van diens vordering. Ter zake van deze benadeling zal naast de aansprakelijkheid van de vennootschap mogelijk ook, afhankelijk van de omstandigheden van het concrete geval, grond zijn voor aansprakelijkheid van degene die als bestuurder (i) namens de vennootschap heeft gehandeld dan wel (ii) heeft bewerkstelligd of toegelaten dat de vennootschap haar wettelijke of contractuele verplichtingen niet nakomt. In beide gevallen mag in het algemeen alleen dan worden aangenomen dat de bestuurder jegens de schuldeiser van de vennootschap onrechtmatig heeft gehandeld waar hem, mede gelet op zijn verplichting tot een behoorlijke taakuitoefening als bedoeld in art. 2:9 BW, een voldoende ernstig verwijt kan worden gemaakt (vgl. HR 18 februari 2000, nr. C98/208, NJ 2000, 295).

Voor de onder (i) bedoelde gevallen is in de rechtspraak de maatstaf aanvaard dat persoonlijke aansprakelijkheid van de bestuurder van de vennootschap kan worden aangenomen wanneer deze bij het namens de vennootschap aangaan van verbintenissen wist of redelijkerwijze behoorde te begrijpen dat de vennootschap niet haar verplichtingen zou kunnen voldoen en geen verhaal zou bieden, behoudens door de bestuurder aan te voeren omstandigheden op grond waarvan de conclusie gerechtvaardigd is dat hem ter zake van de benadeling geen persoonlijk verwijt gemaakt kan worden. In de onder (ii) bedoelde gevallen kan de betrokken bestuurder voor schade van de schuldeiser aansprakelijk worden gehouden indien zijn handelen of nalaten als bestuurder ten opzichte van de schuldeiser in de gegeven omstandigheden zodanig onzorgvuldig is dat hem daarvan persoonlijk een ernstig verwijt kan worden gemaakt. Van een dergelijk ernstig verwijt zal in ieder geval sprake kunnen zijn als komt vast te staan dat de bestuurder wist of redelijkerwijze had behoren te begrijpen dat de door hem bewerkstelligde of toegelaten handelwijze van de vennootschap tot gevolg zou hebben dat deze haar verplichtingen niet zou nakomen en ook geen verhaal zou bieden voor de als gevolg daarvan optredende schade. Er kunnen zich echter ook andere omstandigheden voordoen op grond waarvan een ernstig persoonlijk verwijt kan worden aangenomen.

In de onderhavige zaak wordt - zoals hiervoor in 3.3 weergegeven - aan [verweerder] verweten dat hij als bestuurder van de fiscale eenheid onrechtmatig heeft gehandeld tegenover de Ontvanger doordat hij onbehoorlijk en in strijd met de terzake bestaande wettelijke verplichtingen heeft gehandeld door, naar de kern genomen, de fiscale eenheid niet of niet tijdig dan wel niet juist en volledig aangiften omzetbelasting te laten doen waardoor de Ontvanger is benadeeld. De Ontvanger heeft zich primair dus onmiskenbaar beroepen op de hiervoor onder (ii) bedoelde aansprakelijkheid.

3.6 Uit hetgeen hiervoor in 3.5 is overwogen volgt dat het hof in verband met de door de Ontvanger gestelde primaire grondslag van zijn vordering allereerst moest beoordelen of de aan [verweerder] verweten handelingen onrechtmatig jegens deze zijn geweest, waarbij het hof alle omstandigheden in aanmerking behoorde te nemen.

Nu [verweerder] een daarop gericht verweer had gevoerd, mocht het hof in zijn oordeel betrekken in hoeverre [verweerder] wist of redelijkerwijze had moeten begrijpen dat de belastingschulden van de fiscale eenheid onbetaald zouden blijven. In het oordeel van het hof ligt besloten dat, wanneer dit laatste niet zou komen vast te staan, van een voldoende ernstig persoonlijk verwijt aan [verweerder] geen sprake zou kunnen zijn, omdat de hem verweten handelingen weliswaar inhielden dat de fiscale eenheid niet of niet volledig aan haar wettelijke verplichtingen voldeed, doch in het kader van de beoordeling van zijn persoonlijke aansprakelijkheid op zichzelf niet voldoende zijn voor het aannemen van een zodanig ernstig persoonlijk verwijt dat zijn handelen als onrechtmatig moet worden beschouwd. Het hof vond klaarblijkelijk de stelling van de Ontvanger dat [verweerder] het onbetaald laten van de aanslagen "op de koop toe heeft genomen" in dit verband een te licht (bijkomend) verwijt voor het aannemen van persoonlijke aansprakelijkheid van [verweerder]. Aldus verstaan getuigt het oordeel van het hof niet van een onjuiste rechtsopvatting en is het, in aanmerking genomen dat het hier gaat om een waardering van de omstandigheden die is voorbehouden aan de rechter die over de feiten oordeelt, niet onbegrijpelijk.

Op het voorgaande stuiten alle klachten van de onderdelen 1 tot en met 3 van het middel af.

3.7 Bij behandeling van onderdeel 4 heeft de Ontvanger geen belang, omdat het hiermee bestreden oordeel van het hof zijn beslissing niet zelfstandig draagt.

4. Beslissing

De Hoge Raad:

verwerpt het beroep;

veroordeelt de Ontvanger in de kosten van het geding in cassatie, tot op deze uitspraak aan de zijde van [verweerder] begroot op nihil.

Dit arrest is gewezen door de vice-president D.H. Beukenhorst als voorzitter en de raadsheren O. de Savornin Lohman, E.J. Numann, A. Hammerstein en W.D.H. Asser, en in het openbaar uitgesproken door de raadsheer E.J. Numann op 8 december 2006.