UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of

Cheyne European Strategic Value Credit RAIF-
Cheyne European Special Situations Fund,

Petitioner,

for an Order Pursuant to 28 U.S.C. § 1782 to
Conduct Discovery for Use in a Foreign Proceeding

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _6/30/2026____

25 Misc. 180 (AT) (SN)

**ORDER ADOPTING
REPORT AND
RECOMMENDATION**

ANALISA TORRES, District Judge:

On April 24, 2025, Petitioner, Cheyne European Strategic Value Credit RAIF-Cheyne
European Special Situations Fund ("Cheyne RAIF"), submitted an application for an order pursuant
to 28 U.S.C. § 1782 to obtain discovery for use in a foreign proceeding. ECF No. 1. The Court
referred the matter to the Honorable Sarah Netburn for a report and recommendation ("R&R"). *See*
ECF No. 23. On October 15, 2025, Judge Netburn issued an R&R recommending that Cheyne
RAIF's application be granted. *See* R&R at 1, ECF No. 31. Judge Netburn later authorized the
addition of Cheyne European Special Situations Fund Investments SCA ("Cheyne SCA") as a
Petitioner (collectively with Cheyne RAIF, "Cheyne"), to cure an issue raised after the R&R was
issued. *See* ECF Nos. 35 (motion for reconsideration), 42 (order granting in part motion); *infra* n.2.
Before the Court are objections to Judge Netburn's R&R filed on January 20, 2026, filed by
Redwood Capital Management, LLC ("Redwood"), the party from whom Cheyne seeks discovery.
*See* Objs., ECF No. 49; Resp., ECF No. 50. For the reasons stated below, Redwood's objections are
overruled, and the application is granted.

## BACKGROUND

The facts of this dispute are summarized in detail in Judge Netburn's R&R, and because in large part no party objects to Judge Netburn's recitation of the facts, the Court summarizes the facts as relevant here.[1]

This action concerns a series of refinancing actions undertaken by Hunkemöller, a Dutch lingerie retailer, pursuant to an Indenture and Intercreditor Agreement ("ICA") governing a series of Senior Secured 9% Notes due in 2027. *See* R&R at 1–2. The refinancing consisted of a 2024 financing (the "2024 Transaction") and a 2025 transaction (the "2025 Enforcement Transaction"), *see* R&R at 2. As a result of the 2025 Enforcement Transaction, the funds managed by Redwood now own Hunkemöller. *See* R&R at 2; Pet. Opp. at 6–7, ECF No. 17. Cheyne, along with certain other noteholders, formed an ad hoc group ("AHG") of minority noteholders that were not consulted in connection with the 2024 Transaction and the 2025 Enforcement Transaction. *See* Resp. at 2–5.

Three separate proceedings are relevant to this action. In late 2024, Cheyne and the AHG commenced an action in New York State Supreme Court against multiple parties, including Redwood, asserting contractual and statutory claims based on the 2024 Transaction. *See* R&R at 3. In that action, Cheyne and the AHG served a Request for Production ("RFP") on Redwood, which is "nearly identical to the documents requested here." *Id.* Redwood is no longer a party to the New York action, but discovery "is still proceeding against [Redwood] as a third party." *Id.*

This petition, however, was filed in contemplation of two other lawsuits in foreign jurisdictions—a Dutch proceeding and a U.K. proceeding. *Id.* at 3–4. The Dutch matter will proceed against Holdco, the ultimate parent company of Hunkemöller, and its directors, and will "include tort

---

[1] Redwood does object to one factual representation in Judge Netburn's R&R—that Cheyne RAIF is "the beneficial owner" of certain notes in Hunkemöller. *See* Objs. at 8. Cheyne does not respond to this objection. *See generally* Resp. Reviewing this statement *de novo*, the Court agrees with Redwood that there is no need "to determine which Petitioner is 'the beneficial owner' of the [2027 Notes]," and accordingly, declines to adopt the R&R's finding that Cheyne RAIF is "the beneficial owner" of the subject Notes. Objs. at 8.

claims under the Dutch Civil Code [alleging that the] directors crafted the 2024 Transaction and the 2025 Enforcement Transaction . . . in violation of Dutch law." *Id.* at 3. A separate, pre-litigation Dutch discovery action was commenced in Amsterdam and dismissed by a Dutch court in January 2026. *See* Resp. Ltr., ECF No. 52 at 1. The U.K. action was brought against TMF Trustee Limited, the Security Agent under the ICA, "for breach of its obligations under the debt documents." R&R at 3. The U.K. action was instituted shortly after the R&R was issued. *See* Recons. Mem., ECF No. 36 at 1.

In evaluating the petition, Judge Netburn first examined the three statutory requirements to obtain discovery in 28 U.S.C. § 1782: presence of the Respondent in this District, potential of the documents for use in a foreign proceeding, and Cheyne's interest in the foreign proceedings. *See* R&R at 5–9. As to the first and third factors, Judge Netburn concluded that Redwood was present in this District and that the Petitioners were prospective plaintiffs in both foreign proceedings. *Id.*[2] As to the second factor, Judge Netburn concluded that the requested discovery was "for use" in foreign proceedings, even though the request overlapped with a discovery request in the New York action, because the contemplated foreign actions were "more than speculative" and because Petitioners had met their "*de minimis*" burden to show that the documents could be employed "with some advantage or [] some use" in the foreign proceedings. *See* R&R at 5–9 (quoting *Mees v. Buiter*, 793 F.3d 291, 298, (2d Cir. 2015)); *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241, 258–59 (2004).

Having concluded that the statutory requirements were met, Judge Netburn then considered the four factors delineated by the Supreme Court in *Intel Corp.* to determine whether the discovery was warranted: (1) whether the Respondent is "a participant in the foreign proceeding"; (2) "the

---

[2] At the time the R&R was issued, Judge Netburn's conclusion applied only to Cheyne RAIF, *see* R&R at 1, 9. Redwood then moved for reconsideration of the R&R on the grounds that the U.K. action had subsequently been filed and Cheyne RAIF was not a plaintiff in that action. *See* Recons. Mem. at 1–2. Petitioners cured this defect by adding Cheyne SCA, a plaintiff in the U.K. action, to this proceeding, with Judge Netburn's authorization. *See* ECF No. 42 (order granting motion for reconsideration in part); Recons. Resp. at 1, ECF No. 38 (reporting that Cheyne SCA was a named plaintiff in the U.K. action).

nature of the foreign tribunal . . . and [] proceedings", and "the receptivity of the foreign government or the court or agency aboard to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions"; and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 264–65; *see* R&R at 9–15. Judge Netburn found that the first, second, and fourth factors weighed in favor of granting the application, and that the third factor weighed "slightly against" granting the application. R&R at 10–15. Judge Netburn then recommended that the Court grant the application, but order the parties to meet and confer regarding the scope of the application, notably, concerning documents that Redwood alleges are in the sole custody of entities that are parties to the foreign proceedings. *See* R&R at 10–11, 15–16.

## LEGAL STANDARD

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The Court may adopt those portions of the R&R to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (citation omitted). An R&R is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (citation omitted); *see also Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

A proper objection to an R&R must be timely and specific. "In order to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *Nambiar v. Cent. Orthopedic Grp., LLP*, 158 F.4th 349, 359 (2d Cir. 2025) (quoting *Martin v. Duffy*, 858 F.3d 239, 245 (4th Cir. 2017)). Additionally, an objection "generally may not

4

raise new arguments not previously made before the magistrate judge." *Id*. at 359.  When a party properly objects to an R&R, the district court reviews those arguments *de novo*.  *Id*. at 361.

## DISCUSSION

Redwood's specific objections raise four discrete issues, which the Court reviews *de novo*: (1) whether the contemplated discovery is "for use" in a foreign proceeding;[3] (2) whether the first *Intel* factor weighs for or against granting discovery, *see* Objs. at 11–13; (3) whether Judge Netburn gave proper weight to the third *Intel* factor, *see id.* at 14–16; (4) and whether the fourth *Intel* factor weighs for or against granting discovery, *see id.* at 16–17.

I.        For Use in a Foreign Proceeding

First, Redwood notes that in January 2026, after the R&R was issued, the District Court of Amsterdam dismissed the Dutch pre-litigation discovery action.  *See* Resp. Ltr. at 1.  Because the pre-litigation discovery action denied Cheyne any discovery, and because Cheyne represented that they would only file the contemplated Dutch action "subject to [] discovery" from the pre-litigation action, Redwood argues that the proposed Dutch action is "not within reasonable contemplation of Petitioners."  *See* Resp. Ltr. at 1–2 (quoting Resp. at 6).

The Court is not persuaded.  For a court to hold that requested § 1782 discovery is "for use" in a foreign proceeding, it need only find that the foreign proceeding is "within reasonable contemplation" of a petitioner, and that the material would be of "some advantage or serve some use" in the contemplated proceeding.  *Mees*, 793 F.3d at 298–300.  Moreover, the requested evidence is "for use" in a foreign proceeding if it relates to constructing a pleading or may be adduced to prove a

---

[3] This first question was not raised in Redwood's objections and was instead raised before the Court by a letter submitted eight days after Redwood's objections.  *See generally* Resp. Ltr.  The letter primarily concerns a decision from the District Court of Amsterdam, issued two days after Redwood's objections were filed, *see id.*, and accordingly, the Court considers the issue raised in the letter *de novo*.  *See also* Pet. Ltr., ECF No. 53 (responding to Redwood's letter raising this issue).

claim. *Id.*; *see also Intel.*, 542 U.S. at 259 (holding that a petitioner need demonstrate "only that the evidence is eventually to be used in such a proceeding").

Courts in this Circuit have held, therefore, that the "for use" requirement imposes a *de minimis* burden on petitioners. *See, e.g.*, *In re Associacao dos Profissionais dos Correios*, No. 22 Misc. 132, 2024 WL 4299019, at *4 (S.D.N.Y. Sep. 25, 2024) (collecting cases). The Court finds that Petitioners have met that burden. As they argue in their response, *see* Pet. Ltr., ECF No. 53, the requested documents remain relevant to the contemplated future Dutch proceeding, an action distinct from the pre-litigation discovery proceeding dismissed by a Dutch court in January 2026. The Court rejects, therefore, Redwood's argument that Dutch developments have rendered Petitioners' application insufficient to meet the "for use" element of 28 U.S.C. § 1782.

II.        The First *Intel* Factor

The first *Intel* factor concerns whether the person "from whom discovery is sought is a participant in the foreign proceeding." *Intel Corp.*, 542 U.S. at 264. The purpose of this factor is to determine whether the foreign court has "the ability to control the evidence sought and order production" of that evidence from parties in that proceeding. *In re Saul Klein*, No. 23 Misc. 211, 2023 WL 8827847, at *10 (S.D.N.Y. Dec. 21, 2023), *aff'd sub nom. Klein v. Altara RK Invs. Ltd.*, 2025 WL 560105 (2d Cir. Feb. 20, 2025). If, for example, "for all intents and purposes," a petitioner is truly seeking discovery from its opponent in foreign litigation, courts will find that the first factor does not weigh in favor of discovery. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 85 (2d Cir. 2004); *see also In re CBRE Glob. Invs. (NL) B.V.*, No. 20 Misc. 315, 2021 WL 2894721, at *9 (S.D.N.Y. July 9, 2021); *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) ("[W]hen the real party from whom documents are sought . . . is involved in foreign proceedings, the first *Intel* factor counsels against granting a Section 1782 petition.").

The R&R acknowledged this rule, holding that, as for the first *Intel* factor, the parties should meet and confer to discuss what discovery might be available from the parties in the foreign proceedings.  *See* R&R at 10–11.  Assuming, therefore, that the Court orders the parties to meet and confer regarding scope—and declines to enter an order requiring Redwood to produce documents which are in the sole possession of parties to the foreign proceedings—the Court agrees with Judge Netburn's conclusion that the first factor weighs in favor of discovery.  Redwood's objection merely contends that the discovery request is "overbroad," and does not dispute that Redwood, itself, is not a party to the foreign proceedings.  *See* Objs. at 17.  An order narrowing the scope of available discovery would be sufficient, and, therefore, the Court overrules this objection.

III.        The Third *Intel* Factor

Redwood's next objection is that the R&R did not give sufficient weight to the third *Intel* factor:  whether the § 1782 application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  Here, Judge Netburn considered a forum selection clause in the ICA, which provides that English courts have "exclusive jurisdiction to settle any dispute arising out of or in connection" with the ICA.  R&R at 12 (citing Pet. Opp. at 20).  Because this provision limits disputes under the ICA to the jurisdiction of English Courts, its applicability to the future Dutch proceedings is unsettled.  *See id.* at 12–13; Dutch Pre-Litigation Discovery Opinion (Translated) ¶ 4.7, ECF No. 52-2 ("The nature of the present proceedings does not allow for further examination of this point of dispute [concerning the ICA].")

Judge Netburn held that because the ICA limited jurisdiction for "any dispute" arising from the ICA to reside in English Courts, the third *Intel* factor indicated that the § 1782 application was in tension with any "foreign proof-gathering restrictions" that might apply in U.K. proceedings, and that the third factor therefore weighed against granting the application, although it was "not dispositive."  R&R at 12–13.

Redwood argues that the third factor should weigh "*strongly* against" granting the application. *See* Objs. at 14 (emphasis in original).  In support, Redwood notes that Petitioners are "highly sophisticated parties" which "specialize[] in distressed debt," and claim that this action constitutes "forum shopping."  *Id.* at 16.

However, courts have not found that a § 1782 application always constitutes forum shopping solely because the third *Intel* factor weighs against a petitioner.  For example, in *In re Alhanim*, No. 21 Misc. 167, 2022 WL 1423088, at *4 (S.D.N.Y. May 5, 2022) (cited in Objs. at 16), the court noted that concerns of forum shopping were prompted not just by the presence of a forum selection clause, but also where foreign proof-gathering restrictions were quite limited under Kuwaiti law, and where the Court had concluded that the "real party in interest from whom discovery is sought" was a party to the foreign proceeding.   Here, the second *Intel* factor (foreign proof-gathering restrictions) does not weigh against granting the application, and concerns about forum shopping are reduced, given that the Court shall order the parties to narrow the scope of the proposed discovery to exclude documents which are in the sole possession of parties to either foreign proceeding, *see supra* pages 5–6.

Accordingly, the Court finds that the third *Intel* factor weighs against granting the application, but is not dispositive.

IV.    The Fourth *Intel* Factor

Last, Redwood argues that Judge Netburn improperly analyzed the fourth *Intel* factor: whether the discovery request is overbroad or unduly burdensome.  *See* Objs. at 16–18; R&R at 14.  Courts apply the "familiar standards of Rule 26 of the Federal Rules of Civil Procedure" to determine whether a § 1782 request is overbroad or unduly burdensome, and the Second Circuit has indicated that a district court should generally "reconcile whatever misgivings it may have about the impact of [a § 1782 request] by issuing a closely tailored discovery order rather than by simply denying relief,"

although a court may deny an application in full when the application was made in "bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Mees*, 793 F.3d at 302–03 & n.18 (citations omitted); Objs. at 16–17; Resp. at 17–18.

Analyzing this factor, Judge Netburn held that Cheyne "has sufficiently demonstrated through its submitted declarations that the evidence is relevant to issues in the foreign proceedings," and that many of the requested materials "cannot be subpoenaed by the courts in the foreign proceedings." R&R at 14. Redwood contends that the § 1782 petition here is "facially overbroad"—in essence, an argument that because the request seeks documents related to "40 topics and sub-topics," the Court should presume that the requests are an improper fishing expedition not intended to discover relevant documents. Objs. at 17. There is no reason to do so here: As Cheyne acknowledges, Redwood has not argued that the subpoena topics are, in fact, irrelevant or not proportional to the needs of the case. *See* Resp. at 18; *cf. Optionality Consulting Pte. Ltd. v. Edge Tech. Grp. LLC*, 2022 WL 1977746, at *4 (S.D.N.Y. June 3, 2022) (finding that a discovery request was "presumptively improper" because the plaintiff had not adequately explained "why th[e] request [wa]s proportional to the needs of the case" and requested documents from an "unlimited time period") (cited in Objs. at 17).

Redwood also contends that because the § 1782 request seeks documents from Redwood's "affiliates, parents, subsidiaries, . . . officers," and "related companies," it would impose an undue burden on Redwood to collect, examine, and produce documents held by other parties in other jurisdictions. Objs. at 12, 17–18. The Court, however, acknowledged this concern in the analysis of the first *Intel* factor, and shall not require Redwood to produce documents which are in the exclusive possession of entities that are parties to the foreign proceedings. The Court agrees with Judge Netburn that any remaining disputes are better dealt with through conferral between the parties. *See* R&R at 15 (citing *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 252 (S.D.N.Y. 2018)).

Accordingly, the Court finds that the fourth *Intel* factor weighs in favor of granting the application.

## CONCLUSION

For the foregoing reasons, the Court overrules Redwood's objections[4] and ADOPTS the R&R in full.  Cheyne's petition is GRANTED, subject to the condition that it is not granted as to documents which are in the sole possession of entities that are parties to the foreign proceedings.  The parties are directed to meet and confer on the issue of the burdensomeness of the production of documents possessed by foreign entities that are not parties to the foreign proceedings.

Accordingly:

1. The application at ECF No. 1 is granted, and Cheyne is authorized to take discovery from Redwood by issuing the subpoena at ECF No. 4-1, which directs the deposition of a Redwood representative and the production of certain documents;

2. Redwood shall produce the requested documents within 30 days of service of the subpoena, or such other date as agreed between the parties, and in conformity with the Federal Rules of Civil Procedure and the Local Rules of the United States District Court for the Southern District of New York;

3. Respondent shall appear for a deposition in compliance with the subpoena on a mutually agreeable date within a reasonable time after Redwood confirms the final production of documents in response to the subpoena;

4. Until further order by this Court, Redwood shall preserve all documents, electronic or otherwise, and any evidence in their possession, custody, or control that contain information potentially relevant to the subject matter of the foreign proceedings at issue in the application; and

---

[4] With the exception of the objection discussed in note 1, *supra*.

5. The Court shall retain jurisdiction over this matter for the purpose of enforcing this order and assessing any supplemental request for discovery assistance that may be requested by Cheyne for a period of one year from the date of this order.


SO ORDERED.

Dated: June 30, 2026
       New York, New York

_____
ANALISA TORRES
United States District Judge

11